Melinda Cook REIDWEG, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–000375–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 23, 1998.

Jim Vollers, Austin, for Appellant.

Ronald L. Sutton, Dist. Atty., Junction, for Appellee.

Before LÓPEZ, STONE and DUNCAN, JJ.

## ON APPELLANT'S MOTION FOR REHEARING

STONE, Justice.

Appellants' Motion for Rehearing is denied, however, the unpublished opinion and judgment of this court issued on June 30, 1998, are withdrawn and this opinion and judgment are substituted therefor so as to discuss the Texas Court of Criminal Appeal opinion, *Ormsby v. State*, 600 S.W.2d 782 (Tex.Crim.App.1979).

### FACTS AND PROCEDURAL BACKGROUND

Melinda Cook Reidweg was convicted of operating a motor vehicle in a public place while intoxicated and by accident and mistake causing the death of another. *See* TEX. PENAL CODE ANN. § 49.08(a) (Vernon 1994). The jury sentenced Reidweg to 20 years' imprisonment and fined her $10,000. On appeal Reidweg presents five points of error challenging the trial court's response to a jury question, the admission of evidence regarding blood-serum alcohol content, and the submission of the court's charge to the jury. Because we find no harmful error in the trial, we affirm Reidweg's conviction.

### RESPONSE TO JURY'S QUESTION

■ In her first point of error Reidweg contends the trial court improperly gave the jury additional instructions when the court responded to a jury question. After the jury was dismissed to deliberate, and after Reidweg and her counsel left the court building, the jury wrote a note to the court which stated, "Can jury add probation conditions? i.e.... Testing, electronic devices, etc. other than basic conditions a-j on pg. 2 & 3." The trial court responded in writing under-

neath the question, "No." The trial court did not attempt to contact Reidweg or her attorney before answering the question, nor did the trial court address the question in open court or enter it into the record.

■ Certain procedures must be followed when a deliberating jury communicates with the court and when the court responds thereto. *See* TEX.CODE CRIM. PROC. ANN. art. 36.27 (Vernon 1981). Article 36.27 provides that the court shall answer a jury's written question in writing, but prior to providing an answer, must use reasonable diligence to secure the presence of the defendant and defendant's counsel, and shall submit the question and answer to the defendant for objections. *Id.* If the court cannot locate the defendant and defendant's counsel, the court has discretion to proceed in answering the question as it "deems proper." *Id.* "The written instruction or answer shall be read in open court unless expressly waived by the defendant." *Id.* A trial court commits reversible error if it gives additional instruction to the jury without complying with Article 36.27. *See Rodriguez v. State*, 625 S.W.2d 101, 102 (Tex. App.—San Antonio 1981, pet. ref'd). However, a communication between the trial court and jury that violates Article 36.27, but does not constitute an additional instruction by the court upon the law or some phase of the case, is not reversible error. *Id.; McFarland v. State*, 928 S.W.2d 482, 517–18 (Tex.Crim.App.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). Further, in the absence of harm, a point of error complaining of the trial court's communications with the jury should be overruled. TEX.R.APP. P. 44.2(b); *see McGowan v. State*, 664 S.W.2d 355, 358–59 (Tex.Crim.App.1984).

The communication between the trial court and jury, though violative of Article 36.27, did not amount to additional instructions because the reply of the court did not pertain to the law in regard to the offense or the facts of the case. *See Collins v. State*, 762 S.W.2d 670, 673 (Tex.App.—Tyler 1988, no pet.); *see also McFarland*, 928 S.W.2d at 517 (response of "No" to request for definition of "society" was not an additional instruction); *Martin v.*

*State,* 654 S.W.2d 855, 857 (Tex.App.—Dallas 1983, no pet.) (court instructed jury to continue deliberation after receiving note that the jury was unable to reach a decision). The communication provided no new information to the jury, and thus is not an "additional instruction." Even assuming the court's communication could be construed as an additional instruction to the jury in this case, Reidweg has failed to demonstrate that she was harmed by the court's actions. *See McGowan,* 664 S.W.2d at 358–59. Point of error one is overruled.

### BLOOD SERUM EVIDENCE

■ Reidweg argues in her second point of error that the trial court erred by allowing evidence of the alcohol concentration in her blood serum, when the law provides that intoxication be measured by the alcohol concentration in whole blood. Reidweg contends that by testing the alcohol concentration in her blood serum, as opposed to whole blood, the test results were elevated, and thereby misleading. Reidweg contends the trial court erroneously admitted the evidence of the serum-blood test because such was not relevant to the issue whether Reidweg's whole-blood alcohol concentration was above the legal limit.

■ The trial court has wide discretion in determining the admissibility of evidence. *Johnson v. State,* 698 S.W.2d 154, 160 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Breeding v. State,* 809 S.W.2d 661, 663 (Tex.App.— Amarillo 1991, pet. ref'd). To justify reversal on this basis, a defendant must show that the trial court clearly abused its discretion in excluding relevant testimony. *Johnson,* 698 S.W.2d at 160. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. "All relevant evidence is admissible, except as otherwise provided.... Evidence which is

not relevant is inadmissible." TEX.R. EVID. 402.

Alcohol concentration is determined by measuring the number of grams of alcohol per 100 milliliters of blood. *See* TEX. PENAL CODE ANN. § 49.01(1)(B) (Vernon 1994). "Intoxicated" means having an alcohol concentration of 0.10 or more.[1] *Id.* at § 49.01(2)(B). The Penal Code does not define "blood," nor does it dictate how the test for alcohol concentration should be conducted.

Barbara Smith, a medical technologist who conducted the test on Reidweg's blood, testified that she removed the blood serum from the whole blood and conducted the alcohol-concentration test on the serum. Smith testified that the alcohol concentration measured 0.307. Prior to Smith's testimony, Reidweg moved to have the test results suppressed, contending that a serum-blood alcohol test result is higher than a whole-blood alcohol test result. The trial court denied the motion, stating that the defense should call an expert witness to testify to that fact, if such was true.

Gail Bagby, a medical technologist, testified that she reviewed the test procedures and the test results. Bagby testified that Smith followed proper procedures, and the test results were accurate. Bagby testified that the use of serum in an alcohol-concentration test is a "standard procedure across the country." Bagby testified that "the alcohol is in suspension in the serum, rather than in the cells," and for that reason, a serum-blood test result is more accurate than a whole-blood test result. Bagby testified that any variance in the readings of whole blood tests would be taken into account when the test instrument was standardized, so that the alcohol-concentration test result would be the same under either test procedure.

Reidweg did not present controverting evidence regarding the variance in test results using blood serum from test results using whole blood. Reidweg also failed to introduce evidence that the measurement of 0.10 grams of alcohol per 100 milliliters of blood is strictly based upon a whole-blood test result,

---

1. A person can also be intoxicated by reason of not having normal use of mental or physical faculties due to the introduction of alcohol, among other illicit substances. *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 1994).

and not a standardized, generic measurement.

Based on the uncontroverted testimony of Bagby that test results using blood serum are more accurate, that the use of blood serum is common practice, and that the test results are standardized through the test instrument, the results of the blood-serum test conducted by Smith on Reidweg's blood serum are relevant to consequential facts regarding the commission of the offense charged. The trial court did not abuse its discretion by admitting the evidence of the test results. Reidweg's second point of error is overruled.

■ Relying on the same argument regarding whole blood versus blood serum, Reidweg contends in her third point of error that the trial court committed reversible error by instructing the jury that the word "intoxication" as used in the jury instructions means "having an alcohol concentration of 0.10 or more," because that measurement is based on whole-blood test results. In light of Bagby's uncontroverted testimony that test results using blood serum are more accurate, that the use of blood serum is common practice, and that the test results are standardized through the test instrument, the trial court did not err by submitting the statutory definition of "intoxicated" in the jury instruction. Reidweg's third point of error is overruled.

### JURY CHARGE: MANNER OF INTOXICATION

■ Reidweg's fifth point of error is related to her arguments presented in her second and third point of error. Reidweg contends that the trial court committed reversible error by denying her request to submit separate jury verdict forms upon the issues whether Reidweg was intoxicated by reason of not having normal use of her mental and physical faculties or whether she was intoxicated by reason of the alcohol content in her blood. Reidweg contends that the result of combining the two methods of committing the offense charged allows for a non-unanimous decision because some jurors could have believed her to be intoxicated through loss of faculties and others because her blood alcohol concentration was above the legal limit. Reidweg contends that she was harmed by the erroneous instruction because it rendered her unable to show whether the jurors convicted her on a theory that was unsupported by the evidence. Relying on her previous contention that the alcohol concentration in her blood was improperly measured because the test was based on a blood-serum sample, Reidweg contends that the evidence is insufficient to show she was intoxicated by reason of the alcohol concentration in her blood.

■ An appellant who objects to the omission of an instruction and preserves the error, is entitled to a reversal if the appellant can show "some harm" caused by the omission. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

The charge given to the jury included the following definition of intoxication:

> The word 'intoxication,' as used in these instructions and as applicable to this offense, means not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol into his body.
> The word intoxication also means having an alcohol concentration of 0.10 or more. The phrase 'alcohol concentration,' as used in these instructions means the number of grams of alcohol per 100 milliliters of blood.

This definition mirrors the statutory definition of intoxication. *See* TEX. PENAL CODE ANN. § 49.01(2) (Vernon 1994).

■ The failure of a trial court to submit separate instruction and verdict forms on the two theories of intoxication has been held to be error because it allows a defendant to be convicted by a non-unanimous verdict. *See Ray v. State*, 749 S.W.2d 939, 944 (Tex.App.—San Antonio 1988, pet. ref'd), *overruled sub silentio on other grounds, Atkinson v. State*, 923 S.W.2d 21, 23 (Tex.Crim.App.1996); *see Davis v. State*, 949 S.W.2d 28, 29–30 (Tex.App.—San Antonio 1997, no pet.); *see also Owen v. State*, 905 S.W.2d 434, 437–39 (Tex.App.—Waco 1995, pet. ref'd) (" 'loss of faculties' and 'per se' are two types of driving while intoxicated"). However, the error is not reversible if suffi-

cient evidence supports conviction under either theory. *See Ray,* 749 S.W.2d at 944. The elements of proof needed to show "loss of faculties" and "per se" are not mutually exclusive, in that a test showing that blood had a 0.10 alcohol concentration is probative evidence of a loss of faculties. *See Owen,* 905 S.W.2d at 438.

Reidweg's argument fails because the test using blood serum was accurate and standardized, resulting in a comparable alcohol-concentration result. The evidence is sufficient to support conviction under the alcohol-concentration definition of intoxication. Therefore, any error is not reversible. *See Ray,* 749 S.W.2d at 944. Reidweg's fifth point of error is overruled.

### LESSER INCLUDED OFFENSE

▉▉▉▉ In her fourth point of error Reidweg contends the trial court erred by failing to submit a jury instruction on the lesser included offense of criminal negligent homicide based on evidence that she did not appear intoxicated shortly before the accident. On rehearing, Reidweg relies on *Ormsby* for the proposition that the evidence raised the inference that she acted with criminal negligence.[2]

▉▉▉▉ An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. art. 37.09 (Vernon 1981). To determine whether a jury must be charged on a lesser included offense, a two-step analysis is applied. It must first be

determined that the lesser included offense is included within the proof necessary to establish the offense charged. *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Royster v. State,* 622 S.W.2d 442, 444 (Tex. Crim.App.1981). Under this prong, the court must determine whether the offense meets the statutory definition of a lesser included offense under TEX.CODE CRIM. PROC. art. 37.09 (Vernon 1981). *See Moore v. State of Texas,* 969 S.W.2d 4, 8 (Tex.Crim.App.1998). Second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense, and not the greater offense. *Id.; Rousseau v. State,* 855 S.W.2d 666, 673 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). The evidence may indicate that a defendant is guilty only of the lesser offense by either negating or refuting other evidence establishing the greater offense, or by being subject to different interpretations. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App.1992). A defendant is entitled to a requested charge on a lesser included offense if any evidence supports the charge under this prong, regardless whether the supporting evidence is contradicted. *Moore,* 969 S.W.2d at 8; *Lugo v. State,* 667 S.W.2d 144, 146 (Tex.Crim.App.1984). Accordingly, this court must review all of the evidence presented by the State and the defendant to determine whether the trial court committed reversible error by failing to give an instruction on a lesser included offense. *Moore,* 969 S.W.2d at 8; *Ybarra v. State,* 890 S.W.2d 98, 108 (Tex.App.—San Antonio 1994, pet. ref'd).

*FIRST PRONG:*

A person commits intoxication manslaughter if the person operates a motor vehicle while intoxicated and by reason of intoxication the person causes the death of another by accident or mistake. TEX. PENAL CODE ANN. § 49.08(a) (Vernon 1994). A person commits criminal negligent homicide if the person causes the death of an individual by criminal negligence. *Id.* at § 19.05(a) (Ver-

---

**2.** Although Reidweg raises this issue for the first time in her motion for rehearing, this court will exercise its discretion to consider the matter.

*See Rochelle v. State,* 791 S.W.2d 121, 124–25 (Tex.Crim.App.1990).

non 1994). A person commits criminal negligence:

> with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03 (Vernon 1994).

 "The key to the existence of criminal negligence is the failure of the actor to perceive the risk" created by his conduct. *Still v. State*, 709 S.W.2d 658, 660 (Tex.Crim. App.1986). Proof of a culpable mental state is not required for conviction of intoxication manslaughter. TEX. PENAL CODE ANN. § 49.11 (Vernon Supp.1998). Because intoxication manslaughter does not require proof of a mental state, it is, by statute, a strict liability crime. Accordingly, proof of criminal negligence requires proof of a greater mental state than intoxication manslaughter, and criminal negligent homicide requires proof of different facts than those required to establish intoxication manslaughter. Therefore, criminal negligent homicide cannot be a lesser included offense of intoxication manslaughter. *See* TEX.CODE CRIM. PROC. art. 37.09.

Reidweg relies upon *Ormsby v. State*, 600 S.W.2d 782, 783–84 (Tex.Crim.App.1979), which held that criminal negligent homicide is a lesser included offense of involuntary manslaughter, as support for her contention that she was entitled to instruction on that offense. In *Ormsby*, the defendant was charged with involuntary manslaughter under TEX. PENAL CODE ANN. § 19.05(a)(2). *Id.* at 783, 785.[3] At that time a person committed the offense of involuntary manslaughter if he "by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual." TEX. PENAL CODE ANN. § 19.05(a)(2). The statute clearly did not prescribe proof of a culpable mental state for conviction under section 19.05(a)(2). However, under TEX. PENAL CODE ANN. § 6.02(b), "if the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." Because § 6.02(b) required proof of a culpable mental state, and the definition of involuntary manslaughter did not clearly dispense with such necessity, the *Ormsby* court held that the act of driving while intoxicated under § 19.05(a)(2) was recklessness *per se*. *Ormsby*, 600 S.W.2d at 783–84. Because criminal negligence was a lesser culpable mental state than recklessness, the court held criminal negligent homicide could be a lesser included offense of involuntary manslaughter.[4] *Id.*

 In 1994, the offense of involuntary manslaughter under TEX. PENAL CODE ANN. § 19.05(a)(2) was modified and placed in Chapter 49 of the Penal Code as an offense of intoxication manslaughter. *See* TEX. PENAL CODE ANN. § 49.08(a) (Vernon 1994) Although modified into its present form, the offense remained substantively the same. As its predecessor, Section 19.05(a)(2) Section 49.08 does not expressly require proof of a mental state. However, proof of a mental state is not required under TEX. PENAL CODE ANN. § 6.02(b) as before because TEX. PENAL CODE ANN. § 49.11 clearly dispenses with any

---

**3.** Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, 1987 Tex. Gen. Laws 1698, *modified by* Act of May 23, 1993, 73rd Leg., R.S., ch. 900, § 1, 1993 Tex. Gen. Laws 3697 (codified at TEX. PENAL CODE ANN. § 49.08(a) (Vernon 1994)).

**4.** Upon the State's motion for rehearing in *Ormsby*, Justice Douglas dissented, questioning the court's holding that driving while intoxicated under TEX. PENAL CODE ANN. § 19.05(a)(2) is recklessness *per se*. *Ormsby v. State*, 600 S.W.2d 782, 785–88 (Tex.Crim.App.1979) (Douglas, J., dissenting). Justice Douglas concluded that the language "by accident or mistake" in the statute obviated the necessity to prove a culpable mental state of a person charged with an offense of causing the death of a person by reason of operating a motor while intoxicated. *Id.* at 786. Justice Douglas discussed the legislative history and intent of the statute at that time, concluding that a lesser included offense may not be charged where the allegations include driving while intoxicated and thereby causing the death of a person. *Id.* at 786–88.

mental element requirement for conviction of intoxication manslaughter. By expressly dispensing with the need to prove a mental state, the Legislature transformed intoxication manslaughter into a strict liability crime. As such, the Legislature attempts to avoid the dangers created by the simple act of driving while intoxicated. In its present form, the offense of intoxication manslaughter, as a strict liability crime, cannot constitute recklessness *per se*. Although the offense of intoxication manslaughter derived from the offense of involuntary manslaughter and is substantively the same crime, the enactment of TEX. PENAL CODE ANN. § 49.11 invalidates application of *Ormsby*'s holding that criminal negligent homicide is a lesser included offense of involuntary manslaughter to the offense of intoxication manslaughter.

As a crime reliant upon proof of a negligent mental state, criminal negligent homicide cannot be a lesser included offense of intoxication manslaughter, a strict liability crime. Accordingly, Reidweg's argument fails under the first prong of the lesser-included-offense test.

*SECOND PRONG:*

■■■ Reidweg also relies on *Ormsby* for the contention that the evidence showed she was guilty only of criminal negligence under the second prong of the lesser-included-offense test. Notwithstanding our conclusion that criminal negligent homicide may not be a lesser included offense of intoxication manslaughter under the first prong of the test, we address this contention as well because modifications to the rule of law relied upon in *Ormsby* also preclude reliance upon that court's reasoning to support Reidweg's argument under the second prong of the lesser-included-offense test.

■■■ While the factor that distinguishes criminal negligent homicide from intoxication manslaughter is the failure of the actor to perceive the risk created by his conduct, the absence of intoxication does not establish the necessary mental state element

of criminal negligence. *See Ybarra*, 890 S.W.2d at 110. Before a charge on criminal negligent homicide is required, the record must contain evidence showing an unawareness of the risk created by the person's conduct. *Mendieta v. State*, 706 S.W.2d 651, 653 (Tex.Crim.App.1986); *Ybarra*, 890 S.W.2d at 110. If a reasonable inference that the defendant was not aware of the risk caused by his conduct may be drawn from evidence, a charge on criminal negligence should be submitted. *Ybarra*, 890 S.W.2d at 111. If the record contains no evidence indicating the appellant failed to perceive the risk created by his conduct, the issue of criminal negligence is not raised, and the trial court does not err by failing to give such instruction. *See id.*

■■■ In the instant case, if Reidweg was intoxicated, she clearly would be guilty of operating a motor vehicle while intoxicated and thereby causing the death of another, an offense of intoxication manslaughter. In such case, Reidweg would not be entitled to an instruction on the offense of criminal negligence under the first and second prong of the lesser-included-offense test. *See Rousseau*, 855 S.W.2d at 673. In the absence of intoxication, Reidweg could be guilty of criminal negligent homicide if additional evidence showed that she should have been aware of the unjustifiable risk created by her conduct.[5] *Mendieta*, 706 S.W.2d at 653. Accordingly, to determine whether Reidweg was entitled to her requested charge on criminal negligence, this court must determine whether the record contains some evidence which would permit a jury to rationally find that Reidweg was not intoxicated **and** Reidweg failed to perceive the unjustifiable risk created by her conduct resulting in the accident which she should have perceived. *See Rathmell v. State*, 653 S.W.2d 498, 502 (Tex.App.—Corpus Christi, 1983, pet. ref'd).

■■■ Reidweg relies upon the testimony of James Martin, Manager of Fara's Restaurant in Kerrville, in support of her argument.

---

5. As discussed, proof of criminal negligent homicide requires proof of the additional fact that Reidweg was unaware of the risk created by her conduct. Therefore, Reidweg's argument fails under the first prong of the lesser-included-of-

fense test. However, we will continue in our discussion to address the fallacy of Reidweg's reliance upon *Ormsby* under the second prong as well.

Martin testified that two months after the accident, he was told that Reidweg visited his restaurant on the same day as the accident. Martin testified that he remembered Reidweg's visit close to the day of the accident, but he could not state that it was the same day of the accident. During the visit that Martin remembered, he testified that Reidweg came to the restaurant alone for dinner at about 5:30 in the evening. After making a phone call, Reidweg ordered another dinner to-go and had her food packed to take with her. Martin testified that he talked with and observed Reidweg during the 45 minutes she was in the restaurant. Martin testified that Reidweg consumed one to two glasses of wine during that time. Martin carried Reidweg's food to her car when she left. Martin testified that in his business he had occasion to form opinions about people and their state of intoxication. Martin testified that he did not believe Reidweg to be intoxicated when she left his restaurant at approximately 6:15 p.m.

This court will also review other evidence in the record relative to this issue. *See Ybarra v. State*, 890 S.W.2d at 108. Judy Savage testified that immediately prior to the accident, she traveled on the same road that the accident occurred. Savage observed Reidweg's car traveling at a high rate of speed on a cross street. Reidweg's car skidded through a four-way stop sign and came to a stop in the intersection. Savage testified that she proceeded in the same direction, but to avoid Reidweg's car as it was stopped in the intersection, she had to drive off of the road. Savage did not see Reidweg's car again until, further down the road, Savage pulled off of the road onto a cross street to wait for her son. Savage observed Reidweg's car collide with the rear of the car carrying the victim while the car was stopped at a stop sign.

Sergeant Charles Seale, the State's accident reconstruction expert, estimated Reidweg's speed at the time of the collision to be 76 miles per hour, and the speed of the car in which the victim traveled to be 0 to 5 miles per hour. Thomas Grubbs, Reidweg's accident reconstruction expert, used the data supplied by Seale's investigation of the accident scene, yet estimated the speed of Reidweg's car at the time of collision to be 56.3 m.p.h.

The first police officer on the scene of the accident could not testify at what time he was dispatched or at what time he arrived on the scene. Texas Department of Public Safety Officer John Stafford, the second officer on the scene, testified he arrived at 7:32 p.m. and began his investigation of the accident. Officer Stafford performed a field sobriety test on Reidweg and determined that she was intoxicated. Officer Stafford testified that he looked in Reidweg's car, and did not recall seeing any food or packages.

Because Martin could not testify that Reidweg visited his restaurant on the day of the accident and there was no evidence that Reidweg's car contained food packages, we hold that a rational jury could not infer from the evidence presented that Reidweg was not intoxicated. Accordingly, Reidweg was not entitled to a jury instruction on the lesser included offense of criminal negligence. Nevertheless, Reidweg insists under *Ormsby*, she was entitled to an instruction on criminal negligence because the record raises a reasonable inference that she acted with criminal negligence. We hold that the record does not raise such an inference, and continue to address Reidweg's reliance on *Ormsby*.

The remaining evidence of Reidweg's driving behavior immediately prior to the accident does not raise a reasonable inference that Reidweg failed to perceive the risk created by her driving conduct. *Ormsby* is distinguishable based upon that Court's reliance on a modified rule of law with regard to instruction on lesser included offenses. In *Ormsby*, the Court structured its analysis of the evidence according to the rule at that time requiring an instruction on a lesser included offense if the evidence presented raised the issue that the lesser included offense **may have been committed**. *Ormsby*, 600 S.W.2d at 784 (emphasis added); *see also Moore v. State*, 574 S.W.2d 122, 124 (Tex. Crim.App.1978). This rule was modified in *Rousseau*, 855 S.W.2d at 672–73, in which the Court of Criminal Appeals held that to be entitled to an instruction on a lesser included

offense, **there must be some evidence from which a rational jury could determine that if the defendant is guilty, he is guilty only of the lesser offense.** The *Rousseau* Court stated that in the context of lesser included offenses, the trial court's role is to determine whether some evidence raises an issue that a lesser included offense may have been committed. The jury's role is to determine, under proper instruction, whether the defendant is guilty only of the lesser offense and not of the greater offense. *Id.* at 672. The *Rousseau* Court distinguished the roles of the trial court and the jury in the context of lesser included offenses and developed the new standard to harmonize these roles for the purpose of appellate review on the issue whether an instruction should have been given.

In the context of the present case, the development of the rule on lesser included offenses is important because Reidweg relies upon the *Ormsby* Court's analysis of the facts in that case as basis for her argument that an instruction on criminal negligence should have been given in this case. If this court still followed the analysis followed in *Ormsby,* the result of that case would be persuasive authority for Reidweg's position. In *Ormsby,* the record did not contain evidence of the defendant's driving conduct immediately prior to the accident. The record did contain evidence that the defendant drove while in a state of exhaustion after consuming three beers, and the defendant was familiar with the dangerous conditions of the road. The court determined that the evidence presented was sufficient to raise the issue whether the defendant was aware of the risk that death could result from his conduct, but consciously disregarded such risk. Because the evidence was sufficient to raise the issue whether the defendant acted recklessly, the Court determined the evidence was sufficient to raise the issue whether the defendant acted with criminal negligence.[6]

After *Rousseau,* this court must analyze the evidence presented in a different light, and may not determine whether an instruction on a lesser included offense should have been given based on *Ormsby,* or any cases subsequent to *Ormsby* in which the court followed the modified rule. This court must now determine whether the record contains some evidence from which a rational jury could determine that if Reidweg is guilty, she is guilty only of criminal negligence.

Savage's testimony does not invoke a reasonable inference that Reidweg failed to perceive the risk attendant in her behavior. Savage's testimony reveals only that Reidweg failed to properly stop at a stop sign. Accepting as true Seale's testimony, Reidweg appears to have been traveling at an unreasonable speed at the time of the collision, although there is no evidence of the speed limit. This evidence is not enough to show Reidweg was unaware of the risk attendant in her conduct and, therefore, is not enough from which a rational jury could conclude that Reidweg was guilty only of criminal negligence.

Reidweg was not entitled to an instruction of a lesser included offense under the second prong of the lesser-included-offense test. Nothing in the evidence presented indicates that Reidweg was unaware of the risk her

**6.** In a similar case subsequent to *Ormsby,* the Court of Criminal Appeals appeared to retreat from its position regarding the facts necessary to raise the issue of criminal negligence when the defendant was charged with involuntary manslaughter. *See Aliff v. State,* 627 S.W.2d 166, 172 (Tex.Crim.App.1982). In *Aliff,* the Court held that evidence of a defendant's erratic driving at a high rate of speed immediately prior to a fatal accident did not indicate that the defendant failed to perceive the risk his conduct created, but revealed a conscious disregard for risk involved in driving in a manner in which the defendant was driving. *Id.* The Court held that the fact that the defendant's senses were dulled by the use of alcohol "would not reduce the culpability from recklessness to criminal negligence. Therefore, there was no need to submit the charge on criminal negligent homicide." *Id.* In another case, the Corpus Christi Court of Appeals held that similar evidence that the defendant drove at a high rate of speed on the shoulder of the road was evidence that the defendant exercised a conscious disregard for the risk created by his behavior and failed to raise the issue of negligence. *Rathmell,* 653 S.W.2d at 502–03. These cases would support a determination that Reidweg acted recklessly, not with criminal negligence. However, these cases also followed the rule modified by *Rousseau* regarding instruction on lesser included offenses.

conduct created, therefore, the issue of criminal negligent homicide was not raised. Because nothing in the record indicates that if Reidweg is guilty, she is guilty only of criminal negligence, the trial court did not err by refusing to give Reidweg's requested charge on that offense. Reidweg's fourth point of error is overruled.

The judgment of the trial court is affirmed.